2021 IL App (1st) 171895-U

No. 1-17-1895

Order filed March 31, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 18689 |
| | ) | |
| TERRELL PATTON | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Pierce and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for armed habitual criminal is affirmed over his challenge
to the sufficiency of the evidence.

¶ 2    Following a bench trial, defendant Terrell Patton was found guilty of armed habitual

criminal and sentenced to seven years' imprisonment. On appeal, defendant argues the State failed

to prove him guilty beyond a reasonable doubt where the police officer witnesses were not credible

and the defense witnesses were credible, the trial court drew unreasonable inferences from the

evidence, and the State failed to prove a loaded blue steel .38 special recovered by police was a firearm as defined in the Criminal Code of 2012. We affirm.

¶ 3                                    BACKGROUND

¶ 4    Defendant, who is also known as Terrell Patterson, was charged with one count of armed habitual criminal (720 ILCS 5/24-1.7(a)(3) (West 2016)), which alleged he knowingly or intentionally possessed a firearm after having been convicted of manufacturing or delivering a controlled substance and criminal drug conspiracy in two separate prior cases. Two counts of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)) alleged defendant knowingly possessed a firearm and ammunition after having been convicted of manufacturing or delivering a controlled substance. Six counts of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1)-(2)/(3)(A-5), (C) (West 2016)) alleged defendant knowingly carried an uncased, loaded, and immediately accessible firearm on his person, in the street, and in a vehicle when he had not been issued a Firearm Owner's Identification (FOID) card or valid concealed carry license. As defendant only challenges the sufficiency of the evidence supporting the court's finding of guilt on the armed habitual criminal count, we recite only those facts necessary to decide this appeal.

¶ 5    Chicago police officer Carlos Rojas testified that he and his partners, Officers Delarosa and Sosa, were on duty and driving a police vehicle at approximately 9:30 p.m. on November 29, 2016. Rojas was in the front passenger seat. As the officers traveled southbound on Francisco Avenue, Rojas saw a white Nissan Maxima in front of him driving erratically. The officers pulled the Nissan over at the intersection of Francisco and Flournoy, which was illuminated by artificial lighting. They parked their police vehicle three to four feet behind the Nissan.

¶ 6    Rojas saw defendant, whom he identified in court, exit the rear driver-side door of the Nissan. Rojas exited his police vehicle and ordered defendant to get back in the Nissan. Rojas walked toward defendant as defendant looked to his right, looked at Rojas, then turned to reenter the Nissan. He saw defendant reach into his waistband and remove what appeared to be a "weapon." Rojas was three to four feet from defendant and closing the distance, and nothing obstructed his view. As defendant extended his hand into the Nissan, Rojas saw the weapon fall to the floorboard behind the driver seat. Rojas stood next to defendant, who was now inside the Nissan, and ordered defendant not to grab "that gun" on the floorboard. He pulled defendant out of the Nissan, detained him, and handed him to Delarosa. Rojas recovered the weapon from the floorboard of the Nissan; it was a blue steel .38 special loaded with one live round.

¶ 7    There were three people in the Nissan in addition to defendant. Leonta Green was the driver, Roosevelt Patterson was in the front passenger seat, and Carlos Marks was in the "rear passenger seat."

¶ 8    On cross-examination, Rojas testified it appeared defendant was attempting to flee when he exited the Nissan. He first realized the object defendant removed from his waistband was a gun when defendant extended his arm as he was reentering the Nissan. Rojas did not ask defendant if the gun belonged to him.

¶ 9    Chicago police officer Delarosa testified that he and his partners, Officers Rojas and Sosa, were on duty and patrolling Francisco Avenue at approximately 9:30 p.m. on November 29, 2016. Delarosa was driving the police vehicle. The officers curbed a white Nissan Maxima and Delarosa parked the police vehicle directly behind it. When the Nissan stopped, Delarosa saw defendant, whom he identified in court, open the "rear passenger" door and attempt to get out.

¶ 10   Rojas ordered defendant back into the Nissan and defendant "turned his body away." As Delarosa exited the police vehicle, he saw defendant "reaching in his front," but could not tell what defendant was grabbing. Delarosa walked toward the Nissan; when he reached it, Rojas handed defendant to him and said there was a gun in the car. Delarosa saw Rojas recover a gun from the floorboard behind the driver seat. Delarosa arrested defendant and transported him to a police station.

¶ 11   At the police station, Delarosa read defendant *Miranda* warnings, and defendant agreed to speak with him. Delarosa asked defendant "what was the reason for carrying a gun. Why would you have a gun out there?" Defendant responded, "You've got to have a gun out here, they're killing dudes out here," and "that [defendant] didn't care, he was going to post bond and beat this case."

¶ 12   On cross-examination, Delarosa testified he saw defendant "jump out of the rear passenger side." Defendant did not "admit to ownership of the weapon."

¶ 13   The State moved into evidence certified copies of defendant's 2008 conviction for manufacturing or delivering a controlled substance (720 ILCS 570/401(d)(i) (West 2006)) and his 2004 conviction for criminal drug conspiracy (720 ILCS 570/405.1(a) (West 2002)).

¶ 14   Defendant testified he was a passenger in the rear driver-side seat of a car driven by Leonta Green the night he was arrested. He did not exit the driver-side passenger door. Police recovered a gun that belonged to Green, which was stored beneath a seat in the car.

¶ 15   On cross-examination, defendant testified Leonta Green was in the driver seat, Roosevelt Patterson was in the front passenger seat, and Carlos Marks was in the rear passenger-side seat.

He did not open the door and get out of the Nissan when police arrived. Defendant did not know there was a gun in the car until police recovered it.

¶ 16    Carlos Marks testified he was sitting in the rear passenger-side seat of a car driven by Leonta Green. When the car stopped, Marks tried to exit it and was handcuffed by police. Marks knew there was a gun, which belonged to Green, in the car.

¶ 17    On cross-examination, Marks testified he tried to exit the car because he knew Green had a gun. Marks told police at the scene the gun belonged to Green. Green told police the gun was not his. Only defendant was arrested.

¶ 18    The parties agreed defendant's girlfriend Charise Patterson made a video recording of the incident, and defendant moved the video into evidence. This video depicts four individuals standing next to the passenger side of a light-colored sedan with both the front and rear passenger-side doors open. The two individuals closest to the sedan are facing toward it; the other two individuals are directly behind them, facing toward their backs. Blue police lights are visible. Two additional individuals can be seen standing near the open front passenger-side door of the vehicle No witnesses testified about this video recording.

¶ 19    The State moved into evidence certified copies of defendant's 2015 and 2013 convictions for possession of a controlled substance (720 ILCS 570/402(c) (West 2012)), and Marks's 2013 convictions for possession of a controlled substance (720 ILCS 570/402(c) (West 2010)) and manufacturing or delivering heroin (720 ILCS 570/401(c)(1) (West 2012)).

¶ 20    In closing, defendant argued the video showed the passenger-side door of the Nissan was opened, not the driver-side door, and Marks was standing next to the Nissan in handcuffs, not defendant. Defendant also claimed, "the officer *** never testified that, I saw a gun in his hand."

¶ 21    The court found defendant guilty on all counts and merged the UUWF and AUUW counts into the armed habitual criminal count. In announcing its ruling, the court found the testimony of the officers to be "credible and compelling, more so than both the Defendant and Mr. Marks, both convicted felons."

¶ 22    Defendant filed a motion for new trial, which argued "the manifest weight of the evidence favors a finding of not guilty" and the video recording "clearly contradicts the testimony of the police officers and supports the testimony of the defendant." The court denied this motion.

¶ 23    The court sentenced defendant to seven years' imprisonment. Defendant filed a motion to reconsider sentence, which was denied.

¶ 24                                    ANALYSIS

¶ 25    On appeal, defendant only challenges the sufficiency of the evidence with respect to the court's finding of guilt on the armed habitual criminal count.[1] Specifically, he argues the officers were not credible, the defense witnesses were credible, the trial court drew unreasonable inferences from the evidence, and the State failed to prove the .38 special Rojas recovered was in fact a firearm.

¶ 26    When a defendant challenges the sufficiency of the evidence supporting the trial court's finding of guilt, we review " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[1] Defendant asks that we reverse the trial court's findings of guilt on all counts because all counts required proof of possession of a firearm. However, we do not have jurisdiction to review the merits of any of the counts on which the trial court found defendant guilty but merged and did not pass sentence. Our "jurisdiction extends only to final judgments and *** there is no final judgment in a criminal case unless a sentence has been imposed." *People v. Relerford*, 2017 IL 121094, ¶ 71. Thus, we only consider defendant's arguments with respect to the armed habitual criminal count.

beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact has the responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. *Id.*, ¶ 22. The reviewing court "will not retry the defendant, nor will we substitute our judgment for that of the trier of fact." *Id.* We will not set aside a conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 27    To prove defendant guilty of armed habitual criminal, the State had to establish he knowingly or intentionally possessed a firearm after having been convicted of two or more violations of the Illinois Controlled Substances Act. See 720 ILCS 5/24-1.7(a)(3) (West 2016). Defendant does not dispute the State established his qualifying convictions. He only contests the evidence supporting his possession of a firearm.

¶ 28    Whether a defendant possessed contraband is a factual issue, and we will not disturb the findings of the trial court unless the evidence is so unbelievable that it creates a reasonable doubt as to the defendant's guilt. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27. Possession of a firearm can be actual or constructive. *Id.* "Actual possession is proved by testimony that the defendant exercised some form of dominion over the firearm, such as that he had it on his person, tried to conceal it, or was seen to discard it." *Id.*

¶ 29    We find the evidence established defendant was in actual possession of a firearm. Rojas testified he was three to four feet away from defendant, with an unobstructed view of him in artificial lighting, when he saw defendant remove an object from his waistband. Almost immediately thereafter, when defendant extended his arm to reenter the Nissan, Rojas recognized

the object as a firearm and saw it fall to the floorboard of the Nissan. He immediately recovered the firearm from the floor below where defendant was sitting. Rojas identified the firearm as a blue steel .38 special loaded with one live round. The trial court expressly found Rojas credible. Thus, Rojas's testimony established defendant had the firearm on his person and dropped it on the floorboard of the Nissan, which was sufficient to prove defendant's actual possession of the firearm. See *Id.*; *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) (testimony of a single credible witness is sufficient to convict).

¶ 30    Moreover, defendant's statement to Delarosa supported a reasonable inference he intentionally possessed the firearm in question. At the police station, Delorosa asked defendant why he had a gun. Defendant did not deny he had a gun; rather, he explained he had "to have a gun out here, they're killing dudes out here." There was only one gun recovered during this incident: the .38 special Rojas recovered from the floorboard of the Nissan. Thus, a reasonable factfinder could infer defendant admitted to possessing the .38 special for his own protection. Altogether, Rojas and Delarosa's testimony supported a rational conclusion defendant possessed a firearm. Thus, the evidence was sufficient to support the trial court's finding of guilt for armed habitual criminal.

¶ 31    Defendant essentially asks us to retry the case. He argues the officers were not credible, the defense witnesses were credible, and the trial court drew unreasonable inferences from the evidence. For example, defendant contends Rojas's testimony he saw defendant exit the rear driver side of the Nissan was inconsistent with Delarosa's testimony he saw defendant exit the "rear passenger side." Defendant suggests the officers saw Marks exit the rear passenger side of the Nissan and did not see defendant exit the Nissan at all. In addition, defendant insists the officers'

testimony is "wholly inconsistent with human experience" because nobody would exit a car "to face the police" while carrying a gun. He also argues the trial court incorrectly interpreted defendant's statement to Delarosa as admitting to possessing the gun Rojas recovered, rather than some other gun or guns generally. Defendant claims the trial court "irrationally" discredited defendant's and Marks's testimony the gun belonged to Green.

¶ 32    None of these arguments are appropriate for a challenge to the sufficiency of the evidence on appeal because they address credibility determinations, inferences drawn from the evidence, and the resolution of conflicts in the evidence. These matters "are within the province of the trier of fact, and a reviewing court will not substitute its judgment for that of the trier of fact." *People v. Simpson*, 2015 IL App (1st) 130303, ¶ 44. The trial court explicitly found the officers credible and found defendant and Marks not credible, due in part to their criminal backgrounds. Nothing in the officers' testimony is "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt as to defendant's guilt. (Internal quotations omitted) See *Id.*

¶ 33    Defendant next argues the loaded blue steel .38 special Rojas recovered was not "actually a firearm as defined by the Illinois Criminal Code."

¶ 34    The Criminal Code of 2012 adopts the definition of "firearm" in section 1.1 of the FOID Act. 720 ILCS 5/2-7.5 (West 2016). Under the FOID Act, a firearm is "any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." 430 ILCS 65/1.1 (West 2016).

¶ 35    Our supreme court recently held a single police officer's eyewitness testimony is sufficient to prove an object is a firearm. *McLaurin*, 2020 IL 124563, ¶¶ 32-38. In *McLaurin*, an officer saw the defendant carrying a silver handgun from approximately 50 feet away. *Id.*, ¶ 4. After the

defendant was arrested, the officer identified a recovered handgun as the gun she saw defendant holding, referring to its color and size. *Id.*, ¶ 34. The gun was not presented at trial. *Id.*, ¶ 32. The supreme court affirmed the defendant's conviction for armed habitual criminal, finding the evidence was sufficient to prove he possessed a firearm as defined by section 1.1 of the FOID Act. *Id.*, ¶ 1.

¶ 36    Rojas's testimony is stronger and more detailed than the officer's testimony in *McLaurin*. Rojas identified the firearm as a blue steel .38 special loaded with one live round. He saw defendant drop this gun from, at most, three to four feet away, with an unobstructed and artificially lighted view of defendant. Rojas personally recovered the gun from the floor of the Nissan. Under *McLaurin*, Rojas's testimony was sufficient to support a finding defendant possessed a firearm as defined in the FOID Act. See *People v. Wilson*, 2020 IL App (1st) 170443, ¶ 22.

¶ 37    Defendant's suggestion Rojas was describing "a toy gun, a replica, or a BB gun" strains credulity. Even if there were some evidence that might be the case, the trier of fact is not required to search out all possible explanations consistent with a defendant's innocence and raise them to the level of reasonable doubt. *Jones*, 2019 IL App (1st) 170478, ¶ 32.

¶ 38    We also reject defendant's complaint the State did not introduce the gun or a photograph of it at trial, as such evidence is not necessary to prove the gun was a firearm. See *McLaurin*, 2020 IL 124563, ¶ 32 (affirming the defendant's conviction for armed habitual criminal while acknowledging "[t]he State took a risk by choosing not to introduce into evidence the gun that [an officer] testified was recovered at the scene"). Rojas's detailed description of the item he recovered supported a rational conclusion that item was a firearm. Thus, the evidence was sufficient to support defendant's conviction for armed habitual criminal.

¶ 39                       CONCLUSION

¶ 40    For the foregoing reasons, we affirm defendant's conviction.

¶ 41    Affirmed.